## TESTIMONY AS TO SHOCK FROM OVERCHARGED ELECTRIC WIRE AND THE RESULTANT INJURY.

[Circuit Court of Lucas County.]

GEORGE M. KATAFIASZ v. TOLEDO CONSOLIDATED ELECTRIC CO.

Decided, February 2, 1902.

*Evidence—Hostile Witness—Party Taken by Surprise—Offer to Prove Previous Statement by Same Witness—Failure of Plaintiff to Call His Physician as to Character of His Injury—Contributory Negligence.*

1. The witness G., called by the plaintiff, testified on cross-examination to certain additional facts damaging to plaintiff's case. On re-examination he denied that he had made different statements to plaintiff's counsel previous to the trial, and said he had told all on the occasion of the conference with plaintiff's counsel that he was asked to tell. Thereupon counsel for the plaintiff took the stand and offered to testify that, at the conference at his office, the witness did not mention the additional facts to which he had now testified; and counsel for plaintiff claimed to have been taken by surprise by the witness who had proved hostile to them, and urged that he had the right to acquaint the jury with the statements made by the witness out of court, which offered testimony of counsel the trial judge refused to admit. *Held:* That this testimony was properly excluded under the well established Ohio rule, that a party can not impeach his own witness by showing by other witnesses that he has made out of court statements contrary to those made in court.

2. Where the jury returned a verdict against the plaintiff, manifestly based upon the additional statements made by a witness called by the plaintiff as above stated, and these statements, if true, would warrant the verdict against the plaintiff, a reviewing court will not grant a reversal, notwithstanding three other witnesses testified to the contrary.

3. It is not error to charge a jury that the plaintiff, a consumer of electric light who had received a severe shock, was guilty of contributory negligence, if the jury found that having been told a few minutes before by a customer, who knew of an accident from the same cause, that the wire was overcharged, and it would be dangerous to turn off the light with the bare hand, he nevertheless did attempt to turn off the light with the bare hand, and received the shock complained of in so doing; and this is true notwithstand-

ing the high degree of care required of electric light companies for protection of their patrons.

4. Where a party fails to call a person as a witness, whom he would naturally be expected to call, and who is within reach, it may be inferred that the testimony of this witness, had it been given, would have been unfavorable to the party who failed to call him.

HULL, J.; HAYNES, J., and PARKER, J., concur.

Heard on error.

The plaintiff in error in this case was also plaintiff below, and brought his action to recover against the defendant for personal injuries which he claimed he sustained on account of negligence of the defendant. The defendant denied any negligence on its part, and averred that the plaintiff himself was guilty of negligence which contributed directly to his own injury. The plaintiff complains that the defendant was furnishing electric light for him in his place of business, and that, on account of negligence on the part of the defendant, the current of electricity which was brought into his place of business over and through the wire was so powerful as to render it dangerous to life, and that upon the occasion in question, which was the evening of September 24, 1900, he undertook to turn off the electric light in his place of business, and on account of this powerful current of electricity he received a severe shock, and was thrown to the floor, and, as he claims, sustained serious injuries, which resulted in his sickness and nervous prostration for some time afterwards. As stated, the defendant denied any negligence on it part, and claimed that the plaintiff himself was negligent. The case was tried to the court and a jury, and a verdict returned in favor of the defendant, and judgment entered upon this verdict, and it is this judgment that it is sought to have reversed in this proceeding.

It is claimed by the plaintiff in error that the court erred on the trial of the case, especially in the exclusion of certain evidence, and that the verdict is against and contrary to the weight of evidence. There are some other errors complained of, but these are the two chief claims of the plaintiff.

It appears that the plaintiff, Mr. Katafiasz, had a grocery and saloon in the city of Toledo, and that on the night in question

in some way the electric wires belonging to defendant in that part of the city had become surcharged with electricity, and that quite a number of people sustained shocks, some trifling and some of more severity, and one man was killed in the cellar of his house on this night; and the claim is that Katafiasz was visited about midnight by three or four friends and patrons, after he had locked up his place of business and retired. Upon being aroused, however, he got up and came into the bar or the saloon part of his place after these men came in. They were the witnesses Grytzka, Korleski and Harmenschinski. The plaintiff's claim is, that after waiting upon them, it then being twelve o'clock at night, he requested them to go, and after they went out he undertook to turn off the electric light which was suspended from the ceiling, and received such a shock that he was thrown down, and sustained the injuries complained of.

The men mentioned—Grytzka, Korleski and Harmenschinski—were all called as witnesses, the first one being Grytzka, who is a doctor, having at least studied medicine in Europe, and is called "Doctor"; and the first question of importance that arises in the record is upon his testimony. Grytzka stated the facts as he claimed them in his testimony in chief, narrating the visit to Katafiasz' place. He said that after they had gone out of the door, it was locked and with the electric light going out, they heard a fall then and some outcry, and upon again being admitted to the saloon by Katafiasz' son, they found the plaintiff on the floor in an unconscious condition, and on the inside of three of his fingers there were slight burns about one-sixteenth of an inch wide and perhaps half an inch long on each finger; that Katafiasz recovered consciousness before long, and went to bed.

Upon cross-examination it was drawn out that Grytzka, on an occasion before he made this visit to Katafiasz, had visited the residence of the man who was killed, Mr. Herring, and had seen his dead body, and he testified on cross-examination that he told Katafiasz of the death of Herring, and that he had been killed on account of the electric wires being in this dangerous condition, and that he warned Katafiasz against the dangerous condition of the wires, and warned him not to touch them, and told him that

132    CIRCUIT COURT REPORTS—NEW SERIES.

Katafiasz v. Toledo Consolidated Electric Co.   [Vol. I, N. S.

the only safe way to turn off the light was with some wooden material, or other non-conductor, and that Katafiasz went into the grocery, adjoining the saloon, and procured a wooden clothes pin and brought it in, and that either he or Katafiasz turned on an electric light with this wooden clothes pin.   Grytzka is not very clear which one of them did it.   It was talked over and explained to Katafiasz, Grytzka testified, that it was dangerous to turn on the electric light in the ordinary way.   Grytzka further testified that after they had turned on the electric light they performed some experiments, by putting a needle in a piece of wood and touching the wire, and noticed that it made "the sparks fly," showing that the wire was surcharged with electricity.   All this was brought out on cross-examination, showing that within a few minutes before Katafiasz had turned off the electric light and was injured he had been fully warned of the condition of the wires and of the danger, and shown how to turn off the light with safety, and experiments performed before him showing the condition of the wires.

This testimony having been brought out on cross-examination, Grytzka was re-examined by counsel for the plaintiff, and interrogated as to whether he did not make different statements at the time counsel took his statement in his office, in connection with that of Korleski and Harmenschinski, and the court permitted, over the objection of the defendant, questions to be asked which might tend to impeach Grytzka, and he denied that he had made any different statement to counsel, but was of the opinion that he had stated the matter in regard to the clothes pin and the experiments, although he was not clear about that   He said he told all he was asked; if he did not state that, it was because he was not asked about it.   Counsel were permitted to interrogate him fully, upon re-examination, as to statements that he had made to counsel which varied from the statements which he had made on the witness stand upon cross-examination.

Afterwards, one of counsel took the stand, and testified as to an interview between him and Grytzka and the other two men at his office, and offered to testify to the statements made there by Grytzka, and offered to testify that in the conference at the office

where the statements of the witnesses were taken, Grytzka had said nothing about the clothes pin, or turning on the light with the clothes pin, or in regard to the experiments with the needles in Katafiasz' place.    Counsel claimed they were taken by surprise by the witness, and that he had turned out to be hostile to them, and they claimed the right to have the jury know these facts, and to know the statement made out of court before he was called as a witness.    The court refused to admit this testimony, on the ground that it would be impeaching their own witness.    Exception was taken.

It is urged that the testimony offered through counsel for plaintiff was not for the purpose of impeaching Grytzka, as showing that he had made contradictory statements out of court, but simply for the purpose of showing that he did not state these facts in his statement to counsel.    It is claimed that this did not, properly speaking, impeach the witness, but permitted the jury to know all that he had said on this subject at a former time, when, it was urged, his recollection was fresher than it was at the time of the trial. Therefore, it was urged that the testimony ought not to have been excluded upon the ground that it tended to impeach the witness called by the plaintiff himself.

The rule seems to be well established in this state that a party may not impeach his own witness by showing by other witnesses that he has made statements out of court contrary to those made in court.    The authorities in other states and countries are perhaps somewhat conflicting upon this question.    In *Hurley* v. *State,* 46 Ohio St., 320, 343, the authorities are reviewed, and the question very fully discussed, in the opinion by Judge Williams.    The court say in the syllabus:

"1.    A party who calls a witness, and is taken by surprise by his unexpected and unfavorable testimony, may interrogate him in respect to declarations and statements previously made by him, which are inconsistent with his testimony, for the purpose of refreshing his recollection, and inducing him to correct his testimony or explain his apparent inconsistency, and for such purpose his previous declarations may be repeated to him, and he may be called upon to say whether they were made by him.

134    CIRCUIT COURT REPORTS—NEW SERIES.

Katafiasz v. Toledo Consolidated Electric Co.    [Vol. I, N. S.

"2. In case the witness denies having made such statements, or his answer is ambiguous concerning them, it is not competent for the party calling him to prove them by other witnesses."

The court in the case at bar permitted counsel to interrogate the witness himself as to statements that he had made, or omitted to make, in his office, which appeared to be contradictory to those made upon the witness stand, but refused to permit other witnesses to be called to show the contradictory statements, or to show that he had made a different statement, by omitting to state certain things in the statement that he made out of court. This opinion of Judge Williams is long and a very full and able one, reviewing the authorities on both sides. The judge says in conclusion:

"The rule that a party can not discredit his own witness, by proving that he had made statements at other times inconsistent with his testimony on the trial, is the result of long experience, and has been steadily adhered to by the courts of this country and of England. That the rule has generally operated favorably in judicial investigations can hardly be questioned. If it be conceded it has not had that effect in every instance, as much may be said of any well established rules of law, and the general good result is to be regarded, rather than the particular inconvenience; and it may well be doubted whether it is not a sounder rule than that adopted by some statutes, which leaves it within the unregulated discretion of each judge to admit such and only such testimony as may seem to him expedient."

In the opinion the judge points out the evils that might result from permitting testimony of this kind—that a person, through malice or otherwise, who desired to injure a party, but who is not willing to testify falsely, might make statements out of court which he knew to be false, and when called as a witness testify entirely different, or testify that he knew nothing about the case; that if in such cases other witnesses were called to prove that he had made these contradictory statements out of court, although strictly and properly speaking, the only effect would be to impeach the witness; yet, as the judge argues, the jury would be likely to make an improper use of the testimony, and in a doubtful case, in a criminal case, perhaps, it might turn the scale.

In this case here it is claimed that it is not a contradictory statement, and it is said they sought to prove simply that he did *not* state certain things that he testified to in court; but if a person is called upon out of court, under such circumstances that it would be his duty to state all the facts, and if he omits certain facts at that time which he afterwards states upon the witness stand, it is proper to prove that in his former statement he omitted these important facts, and that has the effect of impeaching the witness.

We had occasion in this court to pass upon that question in the case of *Spaulding* v. *Railway Co.*, 20 C. C., 99, and we said in the syllabus: "Whenever, on a former occasion, it was the duty of a witness to speak, his silence, or his failure to state the whole truth, concerning a material matter, may be shown for the purpose of impeaching his testimony on the witness stand." And if the court had admitted this testimony, it would have tended to impeach this witness in that he had omitted this important statement when called upon by counsel to state what he knew about the case, and the rule seems to be well established that that cannot be done. As Judge Williams argues in the case cited, if a witness may be called in this way to impeach another witness called by the party himself he might equally as well call a witness to impeach his general character for truth and veracity. A party may contradict the unfavorable witness by another witness, and in that way destroy the effect of his testimony. And in the case at bar other witnesses were called who were present on this occasion, in plaintiff's saloon, and gave testimony which contradicted that of Grytzka, and that was properly admitted by the court, and the whole question then went to the jury.

We think that the ruling of the court in excluding this testimony was right; that it was according to the rule laid down by the Supreme Court of this state.

There was sought to be introduced during the trial of the case an ordinance of the city requiring the inspection of wires and other appliances by the city engineer before the same were used by the company, and that the company procure a certificate of such inspection before it began operation. This ordinance was excluded

136    CIRCUIT COURT REPORTS—NEW SERIES.

Katafiasz v. Toledo Consolidated Electric Co.   [Vol. I, N. S.

by the court, and we think properly so.   There is nothing in the record to indicate that any failure to inspect the appliances of this company before they began operation had anything to do with this accident.

It is claimed that the verdict is against the weight of the evidence.   The evidence shows that early that evening, perhaps about eight o'clock, it was discovered by some persons in the neighborhood that the wires were overcharged with electricity; that the electric company was notified and men were sent out in the locality to discover, if possible, what it was.   Perhaps five or six men altogether were in that neighborhood off and on, and some of·them at least until two or three o'clock the next morning.   They testified that they were unable to discover what the trouble was; that in the darkness it was dangerous for them to climb up among the wires, and as early as possible in the morning they investigated, and found that a guy wire of the Postal Telegraph Company had come in contact with one of the wires of this company, and produced this dangerous condition of the wires.

No complaint can be made of the charge of the court upon the rule of law with which the defendant was obliged to conform.   The court charged the jury that the business of furnishing electric lights was attended with danger, and that the company was bound to use a very high degree of care in protecting its patrons.   The court further charged the jury in substance that if the facts were as Grytzka testified as to Katafiasz' knowledge of the condition of the wires and his knowledge of the wires and of the danger in turning off the electric light without some protection for his hands, and if, notwithstanding this knowledge and information, he turned off the light with his hands unprotected, that that would constitute contributory negligence.   The court said:

"It is claimed in this action that the plaintiff was himself guilty of negligence which contributed to his injury; and some evidence has been introduced tending to show that before he received this electric shock of which he complains, he had been advised of the then condition of the electric wire which furnished him the light in question; that he had been advised that it was overcharged, and that it was dangerous to handle in the ordinary way of turning it off.   I will say to you that, if as a matter of

fact, shortly before the plaintiff was injured, he was advised that the wire furnishing him with the light in question was overcharged with electricity and dangerous, and that he was liable to receive a shock by attempting to turn it off, and notwithstanding such knowledge and advice he attempted so to do, and thereby suffered damage, he cannot recover in this action."

No complaint is made of this part of the charge, and it clearly states the law; for if what Grytzka testified to is true, Katafiasz was guilty of contributory negligence which contributed directly to his injury. Grytzka testified that Katafiasz had full and complete information given him immediately before the accident happened. Although a number of witnesses testified contrary to Grytzka's testimony, we are not prepared to say that under all the facts and circumstances of the case the jury were not warranted in believing Grytzka. In the first place he was called by the plaintiff himself. He offered him to the jury; he recommended him as a truthful man; he endorsed him and asked them to believe him, and now when it appeared that his testimony was injurious to the plaintiff, can we say that the jury, although Grytzka was contradicted by Harmenschinski and Korleski and by the plaintiff, were not warranted in believing this witness whom the plaintiff himself had asked them to believe, until it turned out that his testimony was damaging to plaintiff's cause?

There are some things about the case that perhaps gave the jury the impression that the plaintiff was not altogether frank and sincere in all of his claims. Had his injuries been of a very serious character, they probably would have been manifest continuously for some weeks after the accident. On the following day, however, he was in his saloon attending to business, although he said he was somewhat nervous. Dr. Grytzka treated him for some two or three days only. In December following, nearly three months after the accident, he suffered a severe illness, in which he was delirious for some time, and labored under the delusion, it is said, that his bed was surrounded with live wires, and that the room was full of them. But the claim of the defendant was that he was suffering from delirium tremens. Previous to that time he had been about his business as usual, and had attended meetings of the council,

138    CIRCUIT COURT REPORTS—NEW SERIES.

Katafiasz v. Toledo Consolidated Electric Co.    [Vol. I, N. S.

and had attended to business. No serious trouble manifested itself until the fore part of December.

Another thing that may have had some influence with the jury was the fact that although the physician who attended the plaintiff in the illness which he had in December was subpoenæd by the plaintiff and was in the court room or about the court house, he was not called as a witness, although he, of all others, would have been able to give the jury the information that they most desired, as to whether plaintiff, in December, was suffering from an electric shock or delirium tremens, or what his real difficulty was. Where a party fails to call a person as a witness under these circumstances, and whom he would be expected to call, and who would be naturally friendly to him, it may be inferred that if called his testimony would have been adverse to the party who fails to call him. The fact that the plaintiff did not call his attending physician, when it was claimed that he was suffering from delirium tremens and not from the effect of an electric shock, could not have failed to impress the jury and influence them, and probably weakened their faith and confidence in the claims of plaintiff, in a great measure, and may have led them to believe that he had magnified his injuries, and perhaps had not stated the truth as to the accident or the cause of the illness from which he suffered in December.

So, that taking all these facts and circumstances together, we would not be willing to say that the jury were not warranted in believing Grytzka. They saw him on the witness stand. They saw his conduct, and they saw the conduct and demeanor of the other witnesses who were present in the saloon. We have before us only the written record.

The jury may have rendered their verdict against the plaintiff on the ground that he was guilty of contributory negligence; they may have found that the defendant was not guilty of negligence; and we could not say, upon the record in this case, that the finding of the jury was wrong if they so found upon either one or both of these questions. They were proper questions to submit to the jury. They were the judges of the facts. The question of negligence is peculiarly for the jury; and as the Supreme Court has said, where the

minds of reasonable men might differ, and the question has been submitted to a jury, the court will not disturb their finding.

We find no error to the prejudice of the plaintiff in error, and the judgment of the court of common pleas will be affirmed.

*Hurd, Brumback & Thatcher,* for plaintiff in error.

*Smith & Baker,* for defendant in error.